T. J. STANFIELD v. THE STATE.

No. 3051.   Decided March 25, 1914.

1.—Receiving Stolen Property—Sufficiency of the Evidence.

Where, upon trial of receiving and concealing certain cattle alleged to have been stolen, the evidence sustained the conviction, there was no reversible error on that ground.

**2.—Same—Explanation—Recent Possession—Circumstantial Evidence—Charge of Court.**

Where, upon trial of receiving and concealing stolen cattle, the alleged thief when first questioned as to his possession claimed to have purchased them, and the court only instructed the jury on circumstantial evidence and failed to submit the issue made by the explanation of possession in a separate and distinct paragraph, the same was reversible error. Following Mathews v. State, 32 Texas Crim. Rep., 355, and other cases.

**3.—Same—Co-defendant—Competent Witness—Argument of Counsel.**

Upon trial of receiving and concealing stolen cattle, where defendant's co-defendant testified for the State, and then claimed his privilege of not testifying and was excused by the court, there was no error; however, it was improper to permit prosecuting attorney to tell the jury that the State could have thrown more light on the case if such witness had testified, especially where it was not in evidence that the witness claimed his privilege in the presence of the jury.

**4.—Same—Evidence—Hearsay.**

Upon trial of receiving stolen property, it was improper to permit the witness in charge of the pasture of the alleged owner that he had instructions from said owner to keep defendant out.

Appeal from the District Court of Motley. Tried below before the Hon. Jo A. P. Dickson.

Appeal from a conviction of receiving and concealing stolen cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Fires & Diggs* and *Browne & Hawkins* and *T. T. Bouldin* and *Williams & Williams,* for appellant.—On admitting testimony that witness had instructions to keep defendant out of pasture of the alleged owner: Pickord v. State, 13 Texas Crim. App., 468; Chambers v. State, 46 Texas Crim. Rep., 61; Jennings v. State, 42 id., 78; Smith v. State, 33 S. W. Rep., 1080.

On question of explanation of recent possession: Spencer v. State, 61 Texas Crim. Rep., 60, 133 S. W. Rep., 1049; Presley v. State, 60 Texas Crim. Rep., 102, 131 S. W. Rep., 332; Hinsley v. State, 60 Texas Crim. Rep., 565, 132 S. W. Rep., 779; Law v. State, 163 S. W. Rep., 90; Roberts v. State, 60 Texas Crim. Rep., 20, and cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, and *Cowan & Burney* and *G. E. Hamilton,* for the State.—On question of argument of counsel: Clayton v. State, 149 S. W. Rep., 119; Davis v. State, 54 Texas Crim. Rep., 236, 114 S. W. Rep., 366; Chafino v. State, 154 S. W. Rep., 546.

On question of charge on recent possession: Franks v. State, 35 S. W. Rep., 977; Frazier v. State, 62 Texas Crim. Rep., 640, 138 S. W. Rep., 620; Henderson v. State, 50 Texas Crim. Rep., 266, 96 S. W. Rep., 37; Hargrove v. State, 63 Texas Crim. Rep., 143, 140 S. W. Rep., 234.

HARPER, JUDGE.—Appellant was convicted under a count in the indictment in which it was alleged that appellant did unlawfully and

fraudulently receive from Willis Evans and conceal three head of cattle, the property of A. T. Fish, and which said property had theretofore been acquired by the said Willis Evans in such manner as that the acquisition of same comes within the meaning of the term of theft; the defendant well knowing the same had been so acquired at the time he received and concealed the cattle.

It is thus seen that the count in the indictment specifically charges that Willis Evans stole the cattle from Mr. Fish. The proof shows that Mr. Fish lost three head of cattle—heifers—all branded T on hip and T on shoulder. In the record they are particularly described by Mr. Fish and his father. Willis Evans, a few days after the loss of the cattle by Fish, was seen in possession of three heifers that met this description, and the ones he had were branded T on hip and T on shoulder. After reading the description of the animals lost by Fish, and the description of the animals seen in Evans' possession in the Brothers' pasture by Mr. Ingram, one is necessarily driven to the conclusion that Evans was then in possession of the stolen animals. At the time his possession was challenged by Mr. Ingram, Evans told him he had bought the animals from a Mr. Gillespie over on north Pease river. Appellant was there in the Brothers' pasture with Evans, and Mr. Ingram says that when the animals were found Evans sold or pretended to sell the animals to appellant, trading them to him for "some cows and ten dollars." That appellant and Evans then drove the three heifers out of the Brothers' pasture, of which Mr. Ingram was manager. It is thus seen that when appellant received the cattle from Evans they were branded T on hip and T on shoulder. A few days subsequent to this appellant sold some cattle to Mr. Caradine, a butcher; Caradine killed a part or all of the cattle for a barbecue held about that time in Childress County. Caradine sold the hides from the animals he killed to John Scott, who shipped the hides to Finnagin & Co., at Wichita Falls. Sheriff Baccus in investigating the matter went to Wichita Falls, and from a description given him by Mr. Fish selected a hide out of a number in Finnagin & Co.'s house and brought it back. This hide was branded + on hip and + on shoulder. This hide was positively identified by Mr. Fish as the hide of one of the animals he had lost, by its flesh marks, it being a motley faced heifer, with some white in the face, and a red rim under the eyes. Mr. Baccus and a number of other experienced cattlemen, after inspecting the hide, say that the T brand had been changed to + by burning the brand—extending the line above the top of the T so as to make +. If this is true, this brand was changed after the cattle came into the possession of Stanfield, appellant, and would be a cogent circumstance tending to show that he knew they were stolen cattle when they were received by him, otherwise the brand would not have been changed from a T to a + before they were sold. Taking these circumstances and other circumstances in the record, we think the evidence sustains the verdict and we overrule this ground of appellant's motion.

However, it is noticed that when Evans' possession of the cattle was

first questioned he told Mr. Ingram that he purchased them from a man named Gillespie over on North Pease river. The court instructed the jury on circumstantial evidence, and the State insists that this was a sufficient presentation of the issues presented by the testimony, citing a number of cases wherein recent possession and other circumstances were relied on for a conviction, and this court had held that this was a sufficient presentation of the issue raised. But in all those cases it will be noted that when the possession was first challenged no explanation of possession was at that time made. Appellant also says there is a conflict in the decisions of this court, and labors to reconcile the seeming conflict. We do not think there is any conflict in the decisions. In one class of cases the State relied on recent possession and other circumstances in the absence of explanation of possession, and this court held and still holds that it was not necessary to give any charge on recent possession, but a charge on circumstantial evidence was all that was required under such circumstances, for the "recent possession" unexplained is a circumstance with other circumstances in the case to be considered, and it would be improper to single out this circumstance and charge thereon. In the other class of cases, the State relied on possession of recently stolen property, with other circumstances, but in making its proof showed that when the possession of the person on trial was first challenged, he gave *an explanation of his possession,* which if true would entitle him to an acquittal. In that character of case we have held and still hold that in addition to the charge on circumstantial evidence, the issue made by the explanation of his possession, consistent with his innocence, must be presented in a separate and distinct paragraph from the charge on circumstantial evidence. Two or three forms presenting this issue have been approved by this court, one in substance the same as that requested in appellant's charge No. 3, which was refused by the court. Again, we have held that this question might be presented in abbreviated form, that if the jury believed that the explanation was true, or had a reasonable doubt of that fact, an acquittal should follow. Wheeler v. State, 34 Texas Crim. Rep., 353; Matthews v. State, 32 Texas Crim. Rep., 357, and cases there cited. While the different forms used in these cases have both been approved, yet the form used in the Matthews case has come nearer receiving the unanimous approval of the court. It is short, concise, and presents the issue clearly.

Again it is shown that the State called Willis Evans as a witness. This it had the right to do, for even though he was jointly indicted, yet he would be a competent witness for the State. He testified: "I do know about the three yearlings in the Brothers pasture which Stanfield and I took out of that pasture. I bought these yearlings on North Pease river from Gillespie. I could not tell you his first name." This witness then claimed his privilege of not testifying as he was indicted for an offense growing out of this transaction, and he was excused by the court from further testifying as the State intended to prosecute him. There was nothing irregular in these proceedings, and appellant's criticisms

are without merit.   However, in another bill it is shown that in presenting the case Mr. Hamilton, of counsel for the prosecution, in his opening argument to the jury, argued as an element of guilt, that the State had placed the witness Willis Evans upon the stand and that the defendant's counsel had objected to said witness testifying or the State would have thrown more light on the case, which argument the court upon objection did stop, but did not instruct the jury, as requested by counsel for defendant, not to consider the said argument as a criminative fact or circumstance against the defendant, and the said counsel for the State further argued to said jury that said Willis Evans did stand indicted in this same court for this same offense, and though counsel for the defendant at the time objected to this argument for the reason it was out of the record, improper and prejudicial, the court declined to stop counsel but permitted him to continue such argument before said jury." This was improper.  No objection appellant could have made to Evans testifying would have been sustained.  It was not on appellant's objection that the witness was excused, but on his, the witness', plea of privilege, and after the court had sustained such plea, it was not proper for counsel to tell the jury they "could have thrown more light on the case" if such witness had testified.  It is only evidence adduced that can be considered by the jury, and not what could have been adduced if a legal barrier had not been interposed.  Again, when Evans claimed his privilege, the jury was not in the room, and it was improper for counsel to tell them that he stood indicted for the same offense. This fact was not in evidence, and counsel in their argument can not testify to additional facts, and should always keep themselves within the record.  No special charge being requested, this might not present reversible error, but as it will be necessary to reverse the case on account of the error hereinbefore shown, we call attention to this matter that such error may not again creep into the record on another trial of the case.

In another bill it is shown that when Mr. Ingram was testifying, and had shown that he was in charge of the Brothers' ranch and pasture, and to the other facts herein stated, he was asked if he had instructions from Mr. Brothers "to keep appellant Stanfield out of that pasture," and the witness was permitted to answer that he had such instructions. This was improper, and the objection made to this testimony should have been sustained.

The motion for a new trial is very lengthy, and there are a number of bills of exception in the record.  While we do not discuss them, we have carefully reviewed each bill and each ground in the motion, and hold that none of them present error, other than those mentioned above. But on account of those errors the judgment is reversed and the cause remanded.

*Reversed and remanded.*